## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHNATHAN WILLIAMS and
ANTHONY ARONA,

      Plaintiffs,

v.                                  Case No: 8:20-cv-1647-CEH-JSS

3RD HOME LIMITED, 3RD HOME
LIMITED CO. and WADE SHEALY,

      Defendants.
_____/

## O R D E R

      This matter comes before the Court on the Defendants' Motion to Dismiss (Doc. 15) and memorandum of law in support (Doc. 18). Defendants seek an order dismissing this case for lack of personal jurisdiction and improper venue. Plaintiffs filed a response in opposition (Doc. 21), and Defendants replied (Doc. 26). The Court held oral argument on the motion on February 18, 2021. Following the hearing, the Court permitted Defendants to file additional submissions related to the forum selection provisions bearing on the issues raised in Defendants' motion.[1] Doc. 40. The

---

[1] Plaintiffs moved to strike Defendants' submission as being beyond the scope of what Defendants were permitted to file. Doc. 41. Specifically, Plaintiffs contend the Defendants were granted leave to file documents signed by Plaintiffs that defense counsel represented were attached to the initial Complaint, but Defendants instead filed new material not contained in the court file. Defendants oppose the motion to strike. Doc. 42. Although it appears the documents submitted exceed the scope of the anticipated supplemental filing, in the interests of efficiency, the Court will deny the motion to strike. The Court has considered the Defendants' submission.

Court, having considered the motion, heard argument of counsel, and being fully advised in the premises, will deny Defendants' Motion to Dismiss.

## I.   STATEMENT OF FACTS[2]

### A. Background

Plaintiff John Williams ("Williams") resides in Hillsborough County, Florida, and Plaintiff Anthony Arona ("Arona") resides in Georgia (collectively "Plaintiffs"). Doc. 1-1, ¶¶ 1, 3. Defendant 3RD Home Limited ("3RD Home Limited") is a Cayman Islands company founded in 2011 and registered as a foreign entity in Tennessee since 2017. *Id.* ¶¶ 5–8. Defendant 3RD Home Limited Co. ("3RD Home Limited Co.") is a Delaware corporation formed in October 2019 with registered offices in Tennessee. *Id.* ¶¶ 10, 11. Defendant Wade Shealy ("Shealy") resides in Tennessee. *Id.* ¶ 6. Plaintiffs' Complaint sues 3RD Home Limited and 3RD Home Limited Co. as two separate entities, *see* Doc. 1-1, but according to Defendants, there is only one 3RD Home Limited that was originally formed in the Cayman Islands, decommissioned, and subsequently formed as a Delaware Company. Doc. 1 at 2. The Court will refer to 3RD Home Limited and 3RD Home Limited Co. collectively as "3RD Home." Shealy is the founder, chairman and CEO of 3RD Home. *Id.* ¶ 28.

3RD Home is an internet-based luxury property and travel club where members exchange vacation homes and other benefits. *Id.* ¶ 15. Plaintiffs are members of 3RD

---

[2] The facts are derived from Plaintiff's Complaint and attachments, (Doc. 1-1), the allegations of which the Court must accept as true in ruling on the motion, *see Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

Home and have purchased enough shares in unit increments to be members of the "Founder's Circle," which provides additional benefits. *Id.* ¶¶ 10, 11. When Arona made an initial $250,000 investment, 3RD Home had approximately 300 properties. *Id.* ¶¶ 18, 19.  Founding Circle members do not have to make their second home part of the 3RD Home inventory, but at one point both Plaintiffs had properties in the 3RD Home inventory. *Id.* ¶ 21. According to Plaintiffs, 3RD Home represents that it has 10,000 vacation homes in North America, Central America, the Caribbean, South America, Asia, Europe, Australia, and Africa available to its members through its inventory.[3] *Id.* ¶¶ 22, 23.

In May 2020, Plaintiffs filed a complaint in Hillsborough County Circuit Court against 3RD Home and Shealy (collectively "Defendants"). Doc. 1-1. Plaintiffs seek relief against Defendants in three counts: petition to wind up 3RD Home under section 95, Companies Law (2020) due to Shealy's alleged fraud, misconduct, and mismanagement of 3RD Home (Count I); breach of fiduciary duty by Shealy (Count II); and appointment of receiver or custodian because the assets of 3RD Home are being misappropriated or wasted (Count III). *Id.* Defendants removed the action to this court on July 17, 2020, based on diversity of citizenship. Doc. 1.

**B. Jurisdictional Allegations**

---

[3] Defendants assert there are 11,0000 members in 3RD Home's exchange program, and 3.94% of all properties owned by members are in Florida. Doc. 16, ¶¶ 13, 14.  It is not clear how many members or participating shareholders are Florida residents.

Plaintiffs allege that general and personal jurisdiction exist because Defendants have continuously solicited and procured business in Florida by maintaining an interactive website that includes approximately 500 properties available for exchange in Florida, making phone calls into Florida to solicit investors, accepting significant financial investments from Florida residents, committing tortious acts in Florida, causing injuries to persons within this state arising out of acts outside the state, and breaching a fiduciary duty that caused harm in Florida. Doc. 1-1, ¶ 14; Doc. 21.

**C. Motion to Dismiss**

Defendants move to dismiss Plaintiffs' Complaint for lack of personal jurisdiction. Doc. 15. In support, Defendants file the affidavits of Daniel Raidt, Chief Financial Officer ("CFO") of 3RD Home, (Doc. 16) and Defendant Shealy (Doc. 17). Defendants argue that Plaintiffs cannot establish general or specific jurisdiction. 3RD Home was formed originally in the Cayman Islands and transitioned to a Delaware company with its operational offices always being in the State of Tennessee. 3RD Home has never been a Florida company, nor has 3RD Home registered trademark names in Florida. 3RD Home does not maintain offices in Florida. Its directors do not reside in Florida. 3RD Home owns no real or personal property in Florida. While some of 3RD Home's inventory is in Florida, Florida properties constitute only 3.94% of its inventory and Florida revenue accounts for 5.11% of 3RD Home's annual revenue. As for Shealy, he resides in Tennessee, has not sold stock in Florida, and makes all management decisions from 3RD Home's headquarters in Tennessee. Doc. 15–18. Defendants raise two additional arguments: (1) that the corporate shield

4

doctrine exempts from consideration Shealy's conduct as a corporate officer and (2) that a forum selection clause in the Articles of Incorporation for 3RD Home Limited Co. provides for shareholder litigation to be brought in Tennessee. Doc. 18 at 12–13.

Plaintiffs respond that they have adequately pleaded facts to support general and specific personal jurisdiction over Defendants and that asserting jurisdiction over these Defendants does not violate the Due Process Clause of the Fourteenth Amendment. Doc. 21. Plaintiffs argue Shealy is not protected by the corporate shield, where, as here, Shealy has committed a tortious act.

In their motion, Defendants alternatively move to dismiss for improper venue. Plaintiffs argue in response that Defendants may not seek dismissal on venue grounds where they have removed the case to federal court. Plaintiffs contend that Defendants could have requested transfer, but not dismissal. But in any event, Plaintiffs submit that venue is proper in the Middle District of Florida and Defendants fail to demonstrate otherwise.

## II.  LEGAL STANDARD

Motions to dismiss for lack of personal jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(2). A court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans–Siberian Orchestra*, 689 F.Supp.2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)). To withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a *prima facie* case of jurisdiction over the nonresident defendant. *See id.* at 1313; *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623,

5

625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant can refute personal jurisdiction by sustaining its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate its jurisdictional allegations through affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The district court must construe all reasonable inferences in the light most favorable to the plaintiff when confronted with conflicting evidence. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010); *Consol. Dev. Corp.*, 216 F.3d at 1291.

To determine whether personal jurisdiction exists over an out-of-state defendant, courts undertake a two-step analysis. *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the court must determine whether the plaintiff has alleged sufficient facts to subject the defendant to the forum state's long-arm statute. *See Future Tech. Today*, 218 F.3d at 1249. Second, if the court determines that the forum state's long-arm statute has been satisfied, the court must then decide whether exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Id.* In determining whether jurisdiction comports with the Due Process Clause, the court must ask "(1) whether [the] defendant has established sufficient 'minimum contacts' with the [forum state]; and (2) whether the exercise of this jurisdiction over [the] defendant would

offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Internat'l Shoe*, 326 U.S. at 316).

## III.   DISCUSION

Defendants argue that Plaintiffs cannot show that personal jurisdiction exists because the only alleged harm to have occurred inside Florida is a purported loss of share value and such purely economic losses cannot give rise to the court's personal jurisdiction.

### A. Florida's Long-Arm Statute

When jurisdiction is based on diversity, as it is here, Rule 4(e), Fed. R. Civ. P., requires that jurisdiction be determined by the state long-arm statute. *Cable/Home Commc'n Corp.*, 902 F.2d at 855. A defendant may be subject to personal jurisdiction under Florida's long-arm statute by either: (1) engaging in one of the enumerated acts under Florida Statute § 48.193(1)(a), subjecting itself to specific personal jurisdiction; or (2) engaging in substantial and not isolated activity within Florida, as required for general personal jurisdiction under § 48.193(2). *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015). "The reach of Florida's long-arm statute 'is a question of Florida law,' and this Court is required to apply the statute 'as would the Florida Supreme Court.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352

(11th Cir. 2013) (quoting *United Techs. v. Mazer*, 556 F.3d 1260, 1274 (Fla. 11th Cir. 2009)). "Florida's long-arm statute is to be strictly construed." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (applying Florida law) (citation omitted).

Plaintiffs' Complaint alleges Defendants are subject to both general and specific personal jurisdiction under Chapter 48, Florida Statutes. *See* Doc. 1-1, ¶ 14.

**1.** *General Jurisdiction*

General jurisdiction exists under Florida's long-arm statute, subjecting a defendant to the jurisdiction of Florida courts, where a defendant is engaged in "substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, . . . , [and] whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). In the motion to dismiss, Defendants argue that they do not engage in substantial, continuous activity in the state to subject them to personal jurisdiction in Florida. They file the declarations of CEO Shealy and CFO Raidt in support of their motion. Docs. 16, 17. Specifically, as to the corporate Defendant, Defendants argue that 3RD Home has no offices or agents in Florida other than an isolated employee, that its officers and board members do not reside in Florida, it does not own real or personal property in Florida, it is not incorporated in Florida, and only a small percentage of its overall revenue comes from Florida properties. Doc. 18 at 7–8; Docs. 16, 17. Regarding the individual Defendant, Defendants contend Shealy does not and has never lived in Florida, has not been employed in Florida, has not owned

property in Florida since 2003, has not sold stock in Florida, and his management decisions were made from the Tennessee-based office. Doc. 17; Doc. 18 at 8–9.

Plaintiffs' respond that Defendants are subject to general personal jurisdiction in Florida because of Defendants' ongoing activities targeting Florida customers to invest in 3RD Home. Plaintiffs submit the declaration of Florida resident Williams to support their arguments. Doc. 21-2. Specifically, Defendants advertise and market approximately 500 real estate properties located in Florida through their website and overtly target Florida investors. They solicit and accept investments from Florida residents, like Williams, with the investment monies coming from Florida banks. Defendants solicited Florida residents, including Williams, through telephonic and electronic communications regarding investing in 3RD Home's business. Doc. 21 at 9; Doc. 21-2 at 9–11. According to Defendants' declarations, 5.11% of the company's annual revenue, which Plaintiffs estimated to be $250,000, comes from properties in Florida. Doc. 16, ¶ 23.

Most of Defendants' arguments center on their lack of presence in the State of Florida. As the Supreme Court has explained, however, "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.

So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (emphasis in original) (citations omitted).

On the record before it, the Court finds that general personal jurisdiction exists as to 3RD Home. Through its website and officers, 3RD Home has purposely directed its marketing and solicitation activities toward Florida residents. *See* Doc. 1-1 at 19–31. While the Court recognizes that the mere posting of content to a website does not automatically create general jurisdiction in Florida, *see Trustees of Columbia Univ. in City of New York v. Ocean World, S.A.*, 12 So. 3d 788, 795 (Fla. 4th DCA 2009), Defendants here engage in solicitation activities through an interactive website to induce Florida residents to become members of 3RD Home. In addition to Defendants' solicitation of and marketing to Florida residents, Defendants sent corporate communications via email to investors in Florida, including Williams. *See, e.g.,* Doc. 1-1 at 76–80. Construing the evidence in a light favorable to the non-moving party, Defendants actively solicited Florida investors, accepted investments from Florida residents, marketed 500 properties for exchange or rent in Florida, rented properties in Florida, and collected money from Florida residents investing as members and from members utilizing the properties in Florida. 3RD Home is marketing and managing approximately 500 Florida properties, and the Court cannot say that the revenues generated from the use and rental of these Florida properties is *de minimis. See, e.g., TRW Vehicle Safety Sys., Inc. v. Santiso*, 980 So. 2d 1149, 1153 (Fla. 4th DCA 2008)

(where actual sales were a small percentage (less than 1%) of total sales, they were considered *de minimis* and could not support a finding of continuous and systematic business contacts for personal jurisdiction purposes). Additionally, 3RD Home registered with the Florida Division of Corporations to do business in Florida.[4] Doc. 21-3. General jurisdiction over 3RD Home has been established.

**2. *Specific Jurisdiction***

Plaintiffs allege Defendants are subject to the Court's specific jurisdiction because they carried on business in Florida, committed tortious acts in Florida, and caused injuries in Florida. In relevant part § 48.193 provides:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
> 2. Committing a tortious act within this state.
> . . .
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . .:
> a. The defendant was engaged in solicitation or service activities within this state;
> . . .

---

[4] The Florida Division of Corporations lists an individual with a Venice, Florida address, as the registered agent for 3RD Home. Doc. 21-3 at 8. Venice is in Sarasota County, which is within the Middle District of Florida.

Fla. Stat. § 48.193(1)(a)(1), (2), (6)(a).

*a. Carrying on a Business or Business Venture in Florida*

Florida Statute § 48.193(1)(a)(1) provides for personal jurisdiction over defendants who are "carrying on a business or a business venture" in Florida or have an office or agency in Florida. A plaintiff establishes that a defendant is carrying on a business or business venture in the state, if the activities of the defendant sought to be served, when considered collectively, "show a general course of business activity in the State for pecuniary benefit." *Sculptchair, Inc.*, 94 F.3d at 627 (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So.2d 561, 564 (Fla. 1975)). "That requirement can be satisfied either by (1) 'doing a series of similar acts for the purpose of thereby realizing pecuniary benefit or' (2) 'doing a single act for such purpose with the intention of thereby initiating a series of such acts.'" *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 783–84 (11th Cir. 2014) (quoting *Wm. E. Strasser Constr. Corp. v. Linn*, 97 So. 2d 458, 460 (Fla. 1957)).

In the motion to dismiss, in Defendant's reply, and at the hearing, Defendants do not directly respond to the argument that specific jurisdiction is invoked under § 48.193(1)(a)(1), other than to argue that Shealy does not reside in Florida and 3RD Home does not have offices or agents in Florida. But Plaintiffs' argument is broader, as it contends that Defendants' collective business activities show a general course of business activity in the state for pecuniary benefit. The Court agrees.

In determining whether a defendant has engaged in a "general course of business activity" giving rise to personal jurisdiction under § 48.193(1)(a)(1), the

Eleventh Circuit has identified a list of relevant, but not dispositive, factors for courts to consider: "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *RMS Titanic, Inc.*, 579 F. App'x at 784 (citations and internal quotation marks omitted). 3D Home is registered to do business in the State of Florida. Doc. 21-3 at 4. Although not working from a traditional office, Defendants concede at least one employee works in Florida. Shealy actively solicited investments from clients in Florida, including Williams, to join a "private club for the owners of luxury second homes" Doc. 21-2 ¶ 9. 3d Home's inventory includes approximately 500 properties in Florida that it rents or offers to its members for use. Defendants actively advertise and solicit Florida investors through 3d Home's interactive website. As noted above, 5.11% of the company's annual revenue comes from properties in Florida. Significantly, this figure appears tied to rental or use of Florida homes and not to investment monies received from Florida, which for Williams alone was an investment of $737,500 from Florida bank accounts. Consideration of these factors weighs in favor of finding that Defendants were engaged in a general course of business activity in Florida.

Defendants contest that they solicited Williams, and instead claim that Williams contacted Defendants regarding becoming a member after learning about 3RD Home from his friend Arona. Doc. 27, ¶ 6. Defendants also refute that the "Certificate of Authority" issued by the Florida Secretary of State means Defendants

13

are "doing business" in Florida, explaining the registration in Florida was merely for compliance purposes in connection with payroll taxes for a single employee, who works remotely from Florida. *Id.* ¶ 3; Doc. 26 at 2. When confronted with such conflicting evidence, the Court must construe all reasonable inferences in the light most favorable to the plaintiff. *PVC Windoors, Inc.*, 598 F.3d at 810; *see also Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) ("Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."). In so doing, the Court finds Plaintiffs have established the Court has specific jurisdiction over Shealy and 3RD Home under Fla. Stat. § 48.193(1)(a)(1).

### b. Committing a Tortious Act in Florida

Alternatively, as to Shealy, he is alleged to have committed a tortious act in Florida, subjecting him to personal jurisdiction in Florida courts. Fla. Stat. § 48.193(1)(a)(2). Where the threshold question of personal jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated. *8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co.*, 638 So. 2d 149, 151 (Fla. 4th DCA 1994). Count II of Plaintiffs' Complaint sues Shealy for breach of fiduciary duty. Doc. 1-1, ¶¶ 74–80. Under Florida law, a claim for breach of fiduciary duty is an intentional tort. *See, e.g., Goodwin v. Sphatt*, 114 So. 3d 1092, 1094 (Fla. 2d DCA 2013). "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach

14

of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).

Plaintiffs allege that Shealy is the founder, chairman, and CEO of 3RD Home and the sole holder of all its management shares. Doc. 1-1 ¶ 28. As such, Shealy is alleged to have a fiduciary duty to make decisions in the best interest of the members of 3RD Home, including Plaintiffs. *Id.* ¶ 76. Plaintiffs allege that Shealy breached his fiduciary duty by mismanaging 3RD Home's employees, misusing funds invested in 3RD Home for his own gain and benefit, committing waste through the purchase of excessive marketing, knowingly misrepresenting the number of homes in 3RD Home's inventory to members, giving himself massive raises while 3RD Home cannot make a profit, issuing forged resolutions, keeping his own share sales secret, selling shares without Directors' approval, and removing a Director who questioned his mismanagement. Doc. 1-1, ¶ 79. As a result of Shealy's tortious conduct, Plaintiffs allege they have been injured, including injury to Williams in Florida. *Id.* ¶ 79; Doc. 21-2 ¶ 23. As Plaintiffs have alleged the existence of a fiduciary duty, breach of that duty, and damages proximately caused by the breach, s*ee Gracey*, 837 So. 2d at 353, Count II of Plaintiffs' Complaint states a claim for breach of fiduciary duty.

Turning to the jurisdictional analysis, Plaintiffs have proffered evidence to support their allegations that, through telephonic and email communications, Shealy solicited Williams, a Florida resident, to invest in 3RD Home. Shealy represented to Williams the value and benefit of the potential investment and through electronic communications into Florida, provided Williams with documents, attachments, and

links containing information that Williams relied on in making his investments in excess of seven hundred thousand dollars. Doc. 21-2 ¶¶ 6–17. Plaintiffs allege that after inducing Williams to invest, Shealy breached his fiduciary duty to Plaintiffs and others by making decisions that were not in the best interests of 3RD Home's members, and as a result, Plaintiffs suffered damages. Shealy's tortious conduct, his related communications directed to Florida, and the resulting injuries suffered by Williams in Florida subject Shealy to personal jurisdiction in Florida courts.

Defendants argue that personal jurisdiction over Shealy cannot exist in Florida based on tortious conduct as it relates to Plaintiff Arona since Arona is a Georgia resident. Doc. 26 at 1. At the hearing, the Court inquired of defense counsel whether Arona's non-Florida-resident status affected the Court's jurisdictional analysis. Defendants could not direct the Court to any case law or authority holding that personal jurisdiction may not be asserted over a defendant in such circumstances.

In the personal jurisdiction analysis, it is the "defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Further, "a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). Thus, Arona's non-Florida-resident status alone does not preclude a finding of personal jurisdiction over Shealy where Defendant Shealy's connections with the forum have been established.

16

Next, Defendants argue that the alleged tortious conduct by Shealy occurred in Tennessee, not in Florida. The Court notes, however, that the Florida Supreme Court recognizes that "for purposes of the [long-arm] statute, the defendant does not have to be physically present in Florida for the tortious act to occur in Florida." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1206 (Fla. 2010). Rather, a defendant can commit a tortious act within the State "by sending telephonic, electronic, or written communications into Florida, provided the cause of action arose from those communications." *Id.*; *see also Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). Here, Plaintiffs' claims of misrepresentation and mismanagement are connected to Defendants' allegedly duplicitous marketing and solicitation of Williams in Florida and other corporate communications sent to Williams in Florida.

Additionally, "[u]nder Florida law, a nonresident defendant commits 'a tortious act within Florida' when he commits an act outside the state that causes *injury within Florida*." *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1353 (emphasis in original) (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008)); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999). Williams asserts he suffered injuries in Florida. Doc. 21-2, ¶ 23. He states Shealy's tortious conduct resulted in his $737,500 investment from his Florida bank accounts to be wasted or devalued, he has lost the use of those funds, and he has incurred fees and costs. Doc. 21-2, ¶¶ 23, 24.

Defendants argue that the injury may not be purely economic but must be accompanied by personal injury or property damage. While this argument is

persuasive as it relates to an assertion of jurisdiction under § 48.193(6)(a),[5] Defendant's argument under § 48.193(1)(a)(2) is unavailing. *See, e.g., Kim v. Keenan*, 71 F. Supp. 2d 1228, 1234 (M.D. Fla. 1999) (fact that financial harm was the sole injury did not preclude a finding of personal jurisdiction under §§ 48.193(1)(a) and (b) [predecessor sections to §§ 48.193(1)(a)(1) and (2)]  based on conducting a business venture in the state and committing a tort in the state).

### B. Due Process

Having found Florida's long-arm statute reaches these Defendants, the Court turns next to the due process inquiry, which requires the Court to engage in a two-part inquiry. In the first prong, the Court considers whether Defendants engaged in minimum contacts with Florida. In the second prong, the Court must consider whether exercising personal jurisdiction over Defendants would offend "traditional notions of fair play and substantial justice." *Cronin v. Washington Nat'l Ins. Co.*, 980 F.2d 663, 670 (11th Cir. 1993) (citing *Internat'l Shoe Co.*, 326 U.S. at 316; *Madara*, 916 F.2d at 1515–16). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established

---

[5] A defendant subjects himself to the jurisdiction of Florida courts if he "caus[es] injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, … [t]he defendant was engaged in solicitation or service activities within this state." Fla. Stat. § 48.193(1)(a)(6)(a). In Florida, "it is well-established, however, that mere economic injury without accompanying personal injury or property injury does not confer personal jurisdiction over nonresident defendants under section 48.193(1)(f)," the predecessor section to § 48.193(1)(a)(6)(a). *Sculptchair*, 94 F.3d at 629 (citations omitted). Because Plaintiffs have neither alleged nor established personal injury or property damage aside from the purely economic loss pleaded in the complaint, no basis exists for asserting personal jurisdiction over Defendants under § 48.193(1)(a)(6)(a).

no meaningful 'contacts, ties, or relations.'" *Burger King Corp.*, 471 U.S. at 471–72 (quoting *Internat'l Shoe*, 326 U.S. at 319). Defendants fail to address the due process inquiry in their motion.

### 1. Minimum Contacts

Florida courts recognize three criteria to establish the existence of minimum contacts: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being haled into court there. *See Sculptchair*, 94 F.3d at 631.

The proffered evidence shows Defendants deliberately and purposefully targeted and solicited Florida residents to invest in 3RD Home. Through their interactive website and electronic and telephonic communications into the state, Defendants advertised their approximate 500 Florida properties and solicited investors. Defendants benefited in a pecuniary way from Floridians investing in the company and from members renting Florida properties. Where a defendant "has created 'continuing obligations' between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business here." *Burger King Corp.*, 471 U.S. at 476.

Defendants have actively targeted Florida residents for investment in 3RD Home and rental of properties in Florida. Defendants, over the years, have continued

19

to aggressively grow their number of properties in Florida. "Active internet solicitation can subject a defendant to personal jurisdiction." *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1229 (M.D. Fla. 2000) (citations omitted). 3RD Home's interactive website specifically solicits Florida investors, offering them the ability to purchase 3RD Home services such as "All Florida Exchange Properties" and "All Florida Rental Properties." Users can post reviews, become an investor, rent a Florida property, and make reservations. Despite Defendants' claim that members own the properties, Defendants market the properties as their own: "Your dream Florida vacation is possible with our exclusive collection of properties." Doc. 21-3. These activities, collectively, demonstrate that Defendants have availed themselves of the benefits and privileges of doing business in Florida and therefore should reasonably anticipate the possibility of being sued in Florida.

Further, where a plaintiff alleges the commission of an intentional tort, such an allegation may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum if the plaintiff suffers the "effects" or the "brunt of the harm" caused by the defendant's act in the forum state. *Licciardello*, 544 F.3d at 1285 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). The Supreme Court has explained that, unlike a person "charged with mere untargeted negligence," the perpetrator of an intentional tort can reasonably anticipate being haled into a forum where the challenged actions could have a "potentially devastating impact" upon the targeted party. *Calder*, 465 U.S. at 789–90. Plaintiffs have established the Defendants' minimum contacts with the forum to satisfy the first part of the inquiry.

### 2. Fair Play and Substantial Justice

The Court next considers whether exercising personal jurisdiction over Defendants comports with "fair play and substantial justice." *Sculptchair*, 94 F.3d at 631 (citations omitted). Relevant factors for the Court's determination include "the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Here, neither Defendants' motion to dismiss nor affidavits offer any argument or evidence that the exercise of personal jurisdiction over the Defendants would place any burden on Defendants. *See* Docs. 15–18. Moreover, while the burden on Defendants to travel to Florida is not insignificant, "modern methods of transportation and communication reduce this burden significantly." *Robinson*, 74 F.3d at 259 (citation omitted). In contrast, Plaintiff Williams, a Florida resident, has a strong interest in obtaining efficient and convenient relief in this forum, and Florida "has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of non-residents causing injury in Florida." *Licciardello*, 544 F.3d at 1288; *see also Robinson*, 74 F.3d at 259 ("The State of Florida has a significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its resident, concerning assets located within its borders."). Accordingly, the Court finds that exercising personal jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment.

### C.     Corporate Shield Doctrine

Shealy argues that because the claims against him are "primarily management-related claims," the corporate shield doctrine prohibits this Court's exercise of personal jurisdiction over him where the only relevant contacts with Florida are acts that he performed to benefit 3RD Home. Doc. 18 at 12. For purposes of personal jurisdiction under Florida law, the corporate shield doctrine distinguishes "between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation." *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). "Florida courts have held 'that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.'" *Louis Vuitton Malletier, S.A.*, 736 F.3d at 1355 (quoting *Doe*, 620 So. 2d at 1006) (internal quotation marks omitted). Of significance, under Florida law, the corporate shield doctrine is inapplicable where the corporate officer commits an intentional tort. *Doe* at 1006 n.1 (stating "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction"). Although he argues the claims against him are related to his managerial duties, many of the allegations against Shealy stem from acts he performed for his own personal benefit. Because Plaintiffs allege that Shealy committed an intentional tort, Shealy's corporate shield defense to personal jurisdiction fails under Florida law. *See Louis Vuitton Malletier, S.A.*, 736 F.3d at 1354–55.

22

D.     **Forum Selection Clause**

"Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, . . . not state law." *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28–29 (1988)). Under federal common law, forum selection clauses are to be interpreted by reference to "ordinary contract principles." *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999).

In their motion, Defendants argue that the purchase agreements signed by both of the Plaintiffs expressly provide for the application of Cayman law. Additionally, Defendants generally reference the Tennessee forum selection clause contained in 3RD Home Limited Co.'s Delaware Articles of Incorporation, although Defendants do not make the specific argument that Tennessee is the proper forum. Finally, Defendants argue there are no papers designating Florida as the proper forum. Doc. 18 at 13.

At the hearing, Defendants could not point the Court to a contract signed by the Plaintiffs consenting to a Tennessee forum selection clause. At the request of Defendants, the Court gave Defendants until February 22, 2021 to supplement the record with forum selection provisions bearing on the issues in this case. In response, Defendants filed the initial purchase agreements signed by Plaintiffs. Docs. 40-1, 40-2. Defendants indicate that subsequent agreements signed by Plaintiffs contained the identical language, but Defendants do not provide for the Court's consideration any subsequent documents. The purchase agreements filed by Defendants are signed by

Arona and Williams, but do not contain a forum selection provision. Rather, Defendants rely on language from the purchase agreements purportedly binding the purchasers to a confidential information memorandum and the Articles of Incorporation "which may be amended from time to time." *See, e.g.,* Doc. 40-1 at 4. The confidential memorandum states: "The company is a Cayman Islands exempted company limited by shares and registered to do business in the State of Tennessee, USA." Doc. 40-3 at 8. The memorandum does not contain a forum selection clause. It is dated September 25, 2012 and is not signed by Plaintiffs.

Additionally, Defendants filed a Memorandum of Association dated December 14, 2018. Doc. 40-4. The Memorandum includes a provision that "[t]he Company has power to register by way of continuation as a body corporate limited by shares under the laws of any jurisdiction outside the Cayman Islands and to be deregistered in the Cayman Islands." *Id.* at 2. The Memorandum does not contain a forum selection provision and is not signed by Plaintiffs.

Next Defendants file "Actions taken by written consent of the Board of Directors of 3RD Home Limited Co.," dated October 18, 2019. Doc. 40-5. The document appears to adopt resolutions approving the filing of Articles of Incorporation for 3RD Home in Delaware, the appointment of officers, and issuing by-laws. The document is signed by 3RD Home Board of Directors and is not signed by Plaintiffs. The document does not contain a forum selection provision. Defendants attach a resolution signed by Shealy, as the sole holder of management shares of 3RD Home, and dated October 18, 2019, in which Shealy adopts a resolution to de-register

3RD Home in the Cayman Islands and register by way of continuation as a corporation in Delaware. Doc. 40-6. The document does not contain a forum selection provision and is not signed by Plaintiffs.

The last document filed by Defendants is the Certificate of Incorporation for 3RD Home Limited Co., a Delaware corporation, (Doc. 40-7) which was already of record. *See* 16-5. The Certificate is signed by Shealy and dated October 18, 2019. Doc. 40-7 at 6. The Certificate is not signed by Plaintiffs. The Certificate appears to be the only document of record containing a forum selection provision. Article X of the Certificate provides for "Exclusive Jurisdiction for Certain Actions." *Id.* at 5. The provision indicates the State of Tennessee will be the courts with exclusive jurisdiction of the actions enumerated in Article X, unless the Board or one of its committees approves an alternate forum.

Neither Defendants' motion nor defense counsel, at the hearing, provided authority, or even argument, demonstrating the validity or enforceability of this forum selection clause on these Plaintiffs for the claims asserted. The motion does not assert the applicability of this Tennessee forum selection provision, but Defendants now appear to suggest that Plaintiffs' signed purchase agreements from 2012 bind them to a forum selection clause written seven years later in a certificate of incorporation of a successor entity. Additionally, Defendants indicate there are subsequent purchase agreements (that are purportedly identical) that have been signed by Plaintiffs in the interim, but Defendants do not proffer those to the Court. On this

record, Defendants have failed to demonstrate the validity and enforceability of a mandatory forum selection clause to the claims asserted here.

### E.   Venue

Defendants' motion, alternatively, seeks dismissal for improper venue. Doc. 15. Neither Defendants' motion nor memorandum of law presents any argument, citation of authority, or even discussion as to why venue is improper here. For this reason, alone, the motion to dismiss for improper venue is due to be denied.

Moreover, this case was removed from state court by Defendants. "Once a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds." *Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1299 (11th Cir. 2001) (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953)). Rather, in removed actions, venue is governed by § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also Hollis*, 259 F.3d at 1299. Plaintiffs sued in Hillsborough County Circuit Court, and thus for removal purposes, the Tampa Division of the Middle District of Florida is the proper venue under § 1441(a).

As stated by the *Hollis* court, "[a] defendant dissatisfied with venue after removal may, however, seek a transfer to another division or district under federal law." 259 F.3d at 1296 (citing 28 U.S.C. § 1404(a)). As noted by Plaintiffs, Defendants

have not requested transfer.[6] Venue is proper in this Court under § 1441(a), and thus the motion to dismiss on venue grounds is due to be denied.

## IV.  CONCLUSION

Plaintiffs have established that both general and specific jurisdiction exists. Additionally, the due process inquiry has been satisfied. Further, venue is proper in this Court. Accordingly, it is hereby

**ORDERED**:

1.    Defendants' Motion to Dismiss (Doc. 15) is **DENIED**.

2.    Defendants shall file their response to Plaintiffs' Complaint within **fourteen (14) days** of this Order.

3.    Plaintiffs' motion to strike (Doc. 41) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on March 4, 2021.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

---

[6] Plaintiffs additionally argue Defendants waived their right to seek a transfer of venue. Doc. 21 at 20. It is unlikely Defendants have waived a challenge based on *forum non conveniens* grounds. *See* 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3828 (3d ed. 2008) ("In modern litigation, there is generally no time limit on when a motion to dismiss for *forum non conveniens* must be made, which differentiates it from the time limits on a motion to dismiss for improper venue set out in Rule 12(h)...."). The Court need not address transfer as it has not been raised.